CLARK HILL, PLLC
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
3800 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone No. (702) 862-8300
Facsimile No.  (702) 862-8400
Email:  ccarlyon@clarkhill.com
*Counsel for Scott Lyle Graves Canarelli*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>American West Development, Inc.,<br><br>Reorganized Debtor. | Case No.: BK-S-12-12349-MKN<br>Chapter: 11<br><br>**MOTION TO STRIKE PORTIONS OF REPLY TO OPPOSITION TO REORGANIZED DEBTOR'S MOTION (I) TO REOPEN CHAPTER 11 CASE; AND (II) FOR AN ORDER TO SHOW CAUSE WHY SCOTT LYLE GRAVES CANARELLI AND HIS COUNSEL SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING PLAN DISCHARGE, EXCULPATION, RELEASE AND INJUNCTIVE PROVISIONS; OR, IN THE ALTERNATIVE, MOTION FOR LEAVE TO FILE SUPPLEMENTAL DECLARATIONS**<br><br>OST REQUESTED FOR:<br><br>DATE: March 21, 2018<br><br>TIME: 9:30 a.m. |

Scott Lyle Graves Canarelli ("Scott", "Scott Canarelli", or "Petitioner"), by and through

his undersigned counsel, hereby moves to strike portions of the Reorganized Debtor's Reply to

Canarelli's Opposition Motion (I) to Reopen Chapter 11 Case; and (II) for an Order to Show

Cause why Scott Lyle Graves Canarelli and his Counsel Should not be Held in Contempt for

Violating Plan Discharge, Exculpation, Release And Injunctive Provisions (the "Reply") or, in

the alternative, to file the attached Supplemental Declarations of Dana Dwiggins, Esq. and Candace C. Carlyon, Esq..

This Motion is based on the fact that the Reply not only improperly includes settlement communications, but more egregiously presents only one side of such communications. It is submitted that the Court should either strike such references in the Reply, or permit Canarelli to present the balance of the related communications.

This Motion is made and based upon the Points and Authorities below, the pleadings, papers and records on file in this case, and any oral argument which this Court may entertain at the time of the hearing of the motion.

Respectfully submitted this 15th day of March, 2018.

CLARK HILL PLLC

By: /s/ Candace C. Carlyon
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 02666
3800 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Counsel for Scott Lyle Graves Canarelli

POINTS AND AUTHORITIES

I.

THE STATEMENTS MADE IN THE REPLY

The Reply inappropriately contains the following statements:

3.    Based on these assurances, AWDI's counsel drafted the form of proposed order attached hereto as Exhibit 1 (the "Proposed Order"). The Proposed Order resolves the Motion by maintaining a clear distinction between post-Plan Effective Date claims (which may proceed without reference to the    Plan    or    the involvement of this Court) and pre-Plan Effective Date claims (which require leave of this    Court or written consent in order to proceed against AWDI or any other Released Party(ies)).

4.    However, notwithstanding repeated assurances to this Court in the Opposition, Scott Canarelli's counsel has not confirmed that the Proposed Order

-2-

is acceptable. Therefore, AWDI submits the Proposed Order to this Court in the interests of reaching a pragmatic resolution to the Motion.

Reply pps. 2-3.

6.      …Since filing the Motion, AWDI's bankruptcy counsel has attempted to negotiate a consensual resolution of the Motion with Scott Canarelli's counsel but has not yet been able to reach an agreement.

7. After reviewing the Opposition, counsel for AWDI prepared the Proposed Order. AWDI drafted the Proposed Order to provide a pragmatic resolution to the Motion based upon representations made in the Opposition. Despite having provided Scott Canarelli's counsel with the Proposed Order on March 12, 2018, Scott Canarelli's counsel had not provided any response to the Proposed Order as of the time AWDI's counsel finalized this Reply on March 14. Therefore, AWDI hereby submits the Proposed Order to the Court as a pragmatic resolution to the Motion.

8. The Proposed Order address three key issues:

• **First Issue**: Scope of Relief in the Probate Court Action (Proposed Order at ¶1a and 1b). The Proposed Order memorializes what Scott Canarelli and his counsel repeatedly represent in the Opposition: the relief sought in the Probate Court Action is limited solely to relief against Edward Lubbers, Heidi Canarelli and Lawrence D. Canarelli, in their respective capacities as Trustees of the SLGC Trust, for acts occurring on or after the Plan Effective Date in connection with the Purchase Agreement. See ¶20, *infra*.

• **Second Issue**: Third-Party Discovery in the Probate Court Action (Proposed Order at ¶1c). In recognition of the post-Plan Effective Date limitation, the Proposed Order provides for the third-party discovery previously propounded by Scott Canarelli on AWDI and other Released Parties to be withdrawn, without prejudice to Scott Canarelli propounding third-party discovery that is consistent with this limited post-Plan Effective Date scope.

• **Third Issue**: Future/Additional Claims Against Released Parties (Proposed Order at ¶1d). In order to provide an organized process by which Scott Canarelli may seek to bring additional or future claims against Released Parties, the Proposed Order provides that Scott Canarelli shall either obtain leave of this Court or written consent from a Released Party prior to bringing any claim for relief relating to facts or circumstances occurring prior to the Plan Effective Date.

9. Thus, the Proposed Order strikes a careful balance between the interests of AWDI in maintaining the protections provided to it and the Released Parties under the Plan, and the interests of Scott Canarelli in having his post-Plan Effective Date claims adjudicated.

Reply p. 4.

/ / /

4844-9408-2655_v_1

II.

ARGUMENT

**A. The Statements Should Be Stricken**

FRE 408 prohibits, with limited exception, the utilization of settlement communications to prove a claim. Rule 12(f) permits the court to strike Rule 12(f) provides that a court "from a pleading    ...    any    redundant,    immaterial,    impertinent,    or    scandalous matter."    "[S]ettlement documents are inadmissible under Rule 408, and are therefore immaterial."

*Ogundele v. Girl Scouts-Arizona Cactus Pine Council, Inc.,* No. CV-10-1013-PHX-GMS, 2011 WL    1770784,    at    *9    (D.    Ariz.    May    10,    2011)(granting    motion    to    strike documents referring to settlement communications or  negotiations).    "courts have routinely granted motions to strike allegations in pleadings that fall within the scope of Rule 408"); *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 40 (S.D.N.Y.1992) (granting defendant's motion to strike portions of a complaint that referenced settlement discussions under Rule 408 as immaterial and potentially prejudicial); *Agnew v. Avdin Corp.,* Civ. A. No. 88-3436, 1988 WL 92872, * 4 (E.D.Pa. Sept.6, 1988) (striking parts of a complaint pursuant to Rule 408 because they referenced settlement negotiations for the purpose of showing liability)." *Stewart v. Wachowski,* No. CV03-2873 MMMVBKX, 2004 WL 5618386, at *2 (C.D. Cal. Sept. 28, 2004).

"It is axiomatic that offers of settlement or compromise, absent extraordinary circumstances, are inadmissible...." *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 139 (8th Cir. 1968).    This prohibition extends to documents submitted in connection with settlement communications.    *Rubery v. Buth-Na-Bodhaige, Inc.,* 470 F. Supp. 2d 273, 279 (W.D.N.Y. 2007)(granting motion to strike a document which "was sent to plaintiff during the course of settlement negotiations between the parties").    And the prohibition extends to the efforts of a

party to reference its own settlement communications. As stated in the committee notes to FRE 408: "The amendment makes clear that Rule 408 excludes compromise evidence even when a party seeks to admit its own settlement offer or statements made in settlement negotiations. If a party were to reveal its own statement or offer, this could itself reveal the fact that the adversary entered into settlement negotiations." Thus, where, as here, a party attempted to insert references in a reply brief to settlement communications, the court granted a motion to strike. *Callan v. Merrill Lynch & Co.*, No. 09 CV 0566 BEN (BGS), 2010 WL 3452371, at *12 (S.D. Cal. Aug. 30, 2010).

**B. Alternatively, the Court Should Admit the Carlyon and Dwiggins Declarations**

Debtor argues in the Reply that "counsel for AWDI prepared the Proposed Order. AWDI drafted the Proposed Order to provide a pragmatic resolution to the Motion based upon representations made in the Opposition. Despite having provided Scott Canarelli's counsel with the Proposed Order on March 12, 2018, Scott Canarelli's counsel had not provided any response to the Proposed Order as of the time AWDI's counsel finalized this Reply on March 14. Therefore, AWDI hereby submits the Proposed Order to the Court as a pragmatic resolution to the Motion." That statement gives an incorrect impression that Scott Canarelli has not been responsive or attempted to resolve the underlying Motion to Reopen and for Sanctions. Nothing could be further from the truth. As set forth in the Proposed Carlyon Declaration (attached hereto as Exhibit "1") and the Proposed Dwiggins Declaration (attached hereto as Exhibit "2"), in fact:

-prior to the association of bankruptcy counsel, Debtor threatened to pursue sanctions against both Scott and his counsel unless they agreed to substantially expand the scope of the plan discharge to include Scott's post-effective date claims. When questioned regarding the discharge provisions, Counsel for Debtor (not Ms. Axelrod) engaged in an abusive and sexist tirade against

Scott's counsel, including telling her to read the Plan "again slowly" before speaking to him, and stating that she "might not be understanding how the term sheet is intended to work".

-Immediately upon being retained, counsel for Scott reached out to Ms. Axelrod in an effort to resolve the Motion.

-Scott offered to stipulate that he was not pursuing any claims against the Reorganized Debtor or its assets.

-This was reflected in a March 1, 2017 email to Ms. Axelrod reflecting that "we are not seeking any relief against the Debtor, and would so stipulate. We will not expand the scope of the discharge."

-Ms. Axelrod and Ms. Carlyon had a discussion on March 6 (the first date Ms. Axelrod was available).

-Ms. Carlyon sent proposed stipulations to resolve the Motion to Ms. Axelrod on March 5 and March 9. The March 9 proposed stipulation acknowledged that the Surcharge Petition "seeks relief based upon actions occurring after March 15, 2013 (the "Effective Date" of Debtor's First Amended Plan of Reorganization (Dkt. #720) which was confirmed on October 12, 2012 (Dkt. #853), or fiduciary accountings of the Irrevocable Trust ordered by the Probate Court between 1998 to present; thus not precluded by the Plan." In addition, the proposed stipulation acknowledged that "discovery in the Probate Court Proceedings, Scott Canarelli has caused discovery to be served on the Former Trustees of the Irrevocable Trust, Lawrence and Heidi Canarelli, and affiliated entities and trusts, including Debtor. However, that discovery does not relate to any claim against the Debtor, nor to activities related to the Debtor's bankruptcy, and is thus not precluded by the Plan."

4844-9408-2655_v_1

1   -Counsel for Scott responded to Ms. Axelrod's March 9 email and attached "Proposed

2   Order" (which are referenced in the Reply) on March 15, 2017.  A copy of that response is

3   attached to the Proposed Carlyon Declaration as Exhibit A.

4       "Under the rule of curative admissibility, or the 'opening the door' doctrine, the introduction

5   of inadmissible evidence by one party allows an opponent, in the court's discretion, to introduce

6   evidence on the same issue to rebut any false impression that might have resulted from the earlier

7   admission. *See United States v. Segall,* 833 F.2d 144, 148 (9th Cir.1987); *United States v.*

8   *Makhlouta,* 790 F.2d 1400, 1402–03 (9th Cir.1986); I J. Wigmore, Evidence § 15 (Tillers rev.

9   1983)." *United States v. Whitworth,* 856 F.2d 1268, 1285 (9th Cir. 1988).  It is submitted that,

10  based on the statements made in the Reply which were calculated to create the false impression

11  that Debtor, and not Scott Canarelli, have attempted a "pragmatic solution" with respect to the

12  subject matter of the Motion, the Carlyon and Dwiggins Declarations should also be admitted.

13                                          III.

14                                      CONCLUSION

15      For the reasons stated above, it is respectfully submitted that the Court should (1) strike

16  the portions of the Reply referenced in Section I, above; and/or (2) admit the Carlyon and

17  Dwiggins Declarations (proposed declarations attached as Exhibits 1 and 2); and for such other

18  and further relief as this Court might deem just and proper.

19      Respectfully submitted this 15th day of March, 2018.

By: /s/ Candace C. Carlyon
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 02666
3800 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Counsel for Scott Lyle Graves Canarelli

-7-

4844-9408-2655 v. 1

EXHIBIT "1"

EXHIBIT "1"

CLARK HILL, PLLC
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
3800 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone No. (702) 862-8300
Facsimile No. (702) 862-8400
Email: ccarlyon@clarkhill.com
*Counsel for Scott Lyle Graves Canarelli*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | Case No.: BK-S-12-12349-MKN |
| | Chapter: 11 |
| American West Development, Inc., | |
| | **DECLARATION OF CANDACE C. CARLYON, ESQ. IN SUPPORT OF MOTION TO STRIKE PORTIONS OF REPLY TO OPPOSITION TO REORGANIZED DEBTOR'S MOTION (I) TO REOPEN CHAPTER 11 CASE; AND (II) FOR AN ORDER TO SHOW CAUSE WHY SCOTT LYLE GRAVES CANARELLI AND HIS COUNSEL SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING PLAN DISCHARGE, EXCULPATION, RELEASE AND INJUNCTIVE PROVISIONS; OR, IN THE ALTERNATIVE, MOTION FOR LEAVE TO FILE SUPPLEMENTAL DECLARATIONS** |
| Reorganized Debtor. | |
| | OST REQUESTED FOR: |
| | DATE: March 21, 2018 |
| | TIME: 9:30 a.m. |

Candace C. Carlyon, Esq., being first duly sworn, according to law, deposes and states:

1.    The following facts are personally known to me, and if called to testify thereto, I could and would do so, under oath.

2.    I am an attorney at Clark Hill, PLLC, which represents Scott Lyle Graves Canarelli in connection with **REORGANIZED DEBTOR'S MOTION (I) TO REOPEN**

CHAPTER 11 CASE; AND (II) FOR AN ORDER TO SHOW CAUSE WHY SCOTT LYLE GRAVES CANARELLI AND HIS COUNSEL SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING PLAN DISCHARGE, EXCULPATION, RELEASE AND INJUNCTIVE PROVISIONS (the "Motion").

3.      From the time my firm was retained by Scott Canarelli, I have attempted to resolve the Motion.

4.      On behalf of Scott Canarelli I repeatedly  offered to stipulate that he was not pursuing any claims against the Reorganized Debtor or its assets.

5.      This was reflected in my March 1, 2017 email to Ms. Axelrod reflecting that "we are not seeking any relief against the Debtor, and would so stipulate.  We will not expand the scope of the discharge."

6.      I also discussed the matter with Ms. Axelrod on March 6 (the first date Ms. Axelrod was available).

7.      I sent proposed stipulations to resolve the Motion to Ms. Axelrod on March 5 and March 9.  The March 9 proposed stipulation acknowledged that the Surcharge Petition "seeks relief based upon actions occurring after March 15, 2013 (the "Effective Date" of Debtor's First Amended Plan of Reorganization (Dkt. #720) which was confirmed on October 12, 2012 (Dkt. #853), or fiduciary accountings of the Irrevocable Trust ordered by the Probate Court between 1998 to present; thus not precluded by the Plan."   In addition, the proposed stipulation acknowledged that "Scott Canarelli has caused discovery to be served on the Former Trustees of the Irrevocable Trust, Lawrence and Heidi Canarelli, and affiliated entities and trusts, including Debtor.  However, that discovery does not relate to any claim against the Debtor, nor to activities related to the Debtor's bankruptcy, and is thus not precluded by the Plan."

-2-

8.    I responded to Ms. Axelrod's March 9 email and her "Proposed Order" (both of which are referenced by Debtor in its Reply) on March 15, 2017.  A copy of that response (not including the number of prior emails between counsel) is attached hereto as Exhibit A.

I declare, under penalty of perjury, that the foregoing is true and correct.

Dated this 15th day of March, 2018.

_____
CANDACE C. CARLYON, ESQ.

-3-

4844-9408-2655 v. 1

EXHIBIT A

EXHIBIT A

**From:** Carlyon, Candace C.
**Sent:** Thursday, March 15, 2018 10:42 AM
**To:** Axelrod, Brett A.
**Cc:** Dana Dwiggins (ddwiggins@sdfnvlaw.com); Rodriguez, Nancy C.
**Subject:** FW: American West

Dear Brett:

While I appreciate that the attached is a shift from your initial proposal, the proposal suffers from fundamental problems.

First, the concept that your client (controlled by the Canarelli's) will not respond to discovery is simply unacceptable.  As you now know, the Canarelli's were ordered to provide the required accountings with respect to the trust assets.   Their refusal to do so, and the refusal of Mr. Evans, who is clearly under Larry Canerelli's control, to do so, led to the discovery being required.  To the extent that you believe that the discovery, as limited by my co-counsel (as discussed below) is objectionable, the proper place for such a contest is before the discovery commissioner and the Probate Court.

Second, the idea that the Motion should be "granted" is not acceptable.   Instead, the stipulation which I proposed (and which you omitted from your Reply, which inappropriately (1) referenced settlement communications; and (2) hugely inappropriately concealed the other side of those negotiations) would satisfy any legitimate concern that the Debtor has.  If your goal was truly to protect the Debtor from discharged claims rather than to protect the Trustees from complying with their duties and the Probate Court orders, I do not understand why you continue to press your motion, rather than to execute the proffered stipulation.

Third, Subparagraph (b) of the Proposed Order seeks to unilaterally limit my client's claims to those you identify versus the actual claims asserted, i.e., it completely omits my client's claims relating to the accounting of the Trust and the former Trustees' failure to account, as ordered by the Probate court.

With regard to the scope of the discovery propounded:

- I note that the discovery was first sought from the Trustees. Notwithstanding the fact that Mr. Canarelli clearly controls the Debtor, he asserted that: "[t]he Canarellis object to the Requests as oppressive and unduly burdensome to the extent they seek documents in the possession, custody, or control of non-parties, including but not limited to the LLC, the Corporations and the Siblings' Trusts," and the discovery is "obtainable with less burden or expense from another source." It is disingenuous to now assert that such discovery will not be provided by the Debtor.
- Further, the discovery sought seeks to obtain the underlining source information relied upon by the appraiser in complying the business valuation ordered by the Probate Court. This is directly related to the claim you concede is not affected by the bankruptcy, as set forth in subparagraph (a) of your Proposed Order -- namely, the timing of the sale and purchase price of the sale. Indeed, the business valuation expressly states that the appraiser *assumed* the accuracy of the financial submitted to him by Robert Evans. This is potentially a false assumption, based upon the inability of the accountants to reconcile the accounts. Scott is therefore seeking from the third parties all of the financial information relating to the entities that were subject to the sale for the purposes of determining the actual value, including the source information utilized by Mr. Evans in compiling the financial information submitted to the appraiser. This requires, in part, discovery back to 2012, if not earlier. This issue was, in part, the subject of a motion to compel heard before the Discovery Commissioner on March 2, 2018, wherein she recognized the relevancy of the discovery sought and *ordered production of the same*.
- As my client is additionally claiming that the Former Trustees breached their fiduciary obligations by selling all of the business interests at the time they did, my client is entitled to all financial information relating to the sale subsequent to the sales date of March 30, 2013 through the present.
- My client asserts that the asserted reason for the sale (that the loan agreement prohibited distributions) is a pretext, and that, if there was such a limitation under the loan agreement with the Debtor, it applied equally to purchasing Siblings' Trusts.
- As to the accountings submitted by the Former Trustees, as ordered by the Probate Court, the accountings do not reconcile with the financials of the business entities encompassed within the accountings of the Trust or the tax returns. As the Probate Court ordered the Former Trustees to account from 1998 – present, Scott is entitled to seek discovery relating to the same. The Former Trustees are personally liable to my client to the extent the accountings are not accurate, irrespective of the time frame.

# EXHIBIT "2"

# EXHIBIT "2"

1    CLARK HILL, PLLC
     CANDACE C. CARLYON, ESQ.
2    Nevada Bar No. 2666
     3800 Howard Hughes Parkway, Suite 500
3    Las Vegas, NV 89169
     Telephone No. (702) 862-8300
4    Facsimile No.  (702) 862-8400
5    Email: ccarlyon@clarkhill.com
     *Counsel for Scott Lyle Graves Canarelli*
6

7                    UNITED STATES BANKRUPTCY COURT

8                         DISTRICT OF NEVADA

9    In Re:                                    Case No.:  BK-S-12-12349-MKN
                                               Chapter: 11
10      American West Development, Inc.,
                                               DECLARATION OF DANA DWIGGINS,
11                          Reorganized Debtor. ESQ. IN SUPPORT OF MOTION TO
                                               STRIKE PORTIONS OF REPLY TO
12                                             OPPOSITION TO REORGANIZED
                                               DEBTOR'S MOTION (I) TO REOPEN
13                                             CHAPTER 11 CASE; AND (II) FOR AN
                                               ORDER TO SHOW CAUSE WHY
14                                             SCOTT LYLE GRAVES CANARELLI
                                               AND HIS COUNSEL SHOULD NOT BE
15                                             HELD IN CONTEMPT FOR
                                               VIOLATING PLAN DISCHARGE,
16                                             EXCULPATION, RELEASE AND
                                               INJUNCTIVE PROVISIONS; OR, IN
17                                             THE ALTERNATIVE, MOTION FOR
                                               LEAVE TO FILE SUPPLEMENTAL
18                                             DECLARATIONS

19                                             OST REQUESTED FOR:

20                                             DATE:  March 21, 2018

21                                             TIME:  9:30 a.m.

22

23        Dana Dwiggins, Esq., being first duly sworn, according to law, deposes and says:

24        1.      The following facts are personally know to me, and if called to testify thereto, I

25   could and would do so, under oath.

26        2.      I am a partner at Solomon Dwiggins & Freer, Ltd., counsel for Scott Canarelli in

27   Case # P-13-078912-T.

28

3.      I make this Declaration in support of Scott Canarelli's Motion to Strike Portions of the Reorganized Debtor's Reply to Canarelli's Opposition Motion (I) to Reopen Chapter 11 Case; and (II) for an Order to Show Cause why Scott Lyle Graves Canarelli and his Counsel Should not be Held in Contempt for Violating Plan Discharge, Exculpation, Release And Injunctive Provisions (the "Reply" to the "Motion") or, in the alternative, to file the attached Supplemental Declarations.

4.      The statements in the Reply appear calculated to create an impression that Scott Canarelli did not attempt to resolve the Motion to Reopen or for Sanctions.  The opposite is true. Despite the threat of "sanctions" against both my client and my firm, I repeatedly attempted to resolve the Motion.  While I repeatedly made it clear that Scot Canarelli was not seeking to assert any claims against American West Development, Inc., I would not, agree to broaden the scope of the Plan discharge provisions.

5.      However, when I attempted to discuss the scope of the discharge and asked opposing counsel (Nathan Schultz) to explain why he believed that the Probate Action was precluded by the Plan, he told me that I should "read it again, slowly" before talking to him.  He sent a proposed "term sheet" is hereto attached as Exhibit A. When I pointed out that the term sheet would expand the scope of the bankruptcy discharge and limited my client's ability to conduct discovery and otherwise prove damages, he indicated that I must not "understand" it. Throughout our discussions, Mr. Schultz exhibited a lack of respect and repeated demeaning statements.

6.      As Ms. Axelrod has been advised, discovery requests were propounded on American West, Inc. only after Lawrence Canarelli, who is the Chief Executive Officer of the Debtor, objected to production of documents, stating:  "[t]he Canarellis object to the Requests as oppressive and unduly burdensome to the extent they seek documents in the possession, custody,

-2-

1    or control of non-parties, including but not limited to the LLC, the Corporations and the

2    Siblings' Trusts," and the discovery is "obtainable with less burden or expense from another

3    source."

4        I declare under penalty of perjury that the foregoing is true and correct.

5    Dated this 15th day of March, 2018.

6

7                                   /s/ Dana Dwiggins
                                     DANA DWIGGINS, ESQ.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                          -3-

EXHIBIT "A"

EXHIBIT "A"

PRIVILEGED AND CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FRE 408 AND SIMILAR PROTECTIONS

## Term Sheet

This Term Sheet sets forth proposed terms for the resolution of the *Reorganized Debtor's Motion (I) to Reopen Chapter 11 Case; and (II) For an Order to Show Cause Why Scott Lyle Graves Canarelli and His Counsel Should Not Be Held in Contempt for Violating Plan Discharge, Exculpation, Release and Injunctive Provisions* (the "Motion") filed on February 8, 2018 by AWDI in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"). The provisions of this Term Sheet will not become binding unless and until they are embodied in a definitive agreement executed by the parties (a "Definitive Agreement").

Parties:                      Scott Lyle Graves Canarelli ("Scott Canarelli")

                             Solomon Dwiggins & Freer, Ltd. (the "Solomon Firm")

                             American West Development, Inc. ("AWDI")

1) Additional Defined Terms:

   "Barred Claims" means any and all claims, causes of action, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, in law, at equity, whether for tort, contract, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances existing or taking place after the Plan Effective Date, whether asserted or to be asserted at any time in the State Court Action or otherwise, by Scott Canarelli against any and all of the Released Parties other than the Excepted Claims.

   "Chapter 11 Case" means Case Number BK-S-12-12349-MKN pending before the Bankruptcy Court.

   "Excepted Claims" means claims against Ed Lubbers, Lawrence Canarelli and/or Heidi Canarelli solely in each of their respective capacities as trustee of the SLGC Trust based upon an any act or omission taking place after the Plan Effective Date.

   "SLGC Trust" means The Scott Lyle Graves Canarelli Irrevocable Trust, dated February 24, 1998.

   "State Court Action" means the action in the District Court for the County of Clark, Nevada, Case Number P-13-078912-T filed by Scott Canarelli seeking certain relief regarding the SLGC Trust.

   "Plan" means the *First Amended Chapter 11 Plan of Reorganization* [Chapter 11 Case Docket No. 714] (as corrected in accordance with the *Errata to Debtor's First Amended Chapter 11 Plan of Reorganization* [Chapter 11 Case Docket No. 784].

   "Plan Effective Date" means March 15, 2013.

   "Released Claims" means any and all claims, causes of action, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, in law, at equity, whether

1

PRIVILEGED AND CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FRE 408 AND SIMILAR PROTECTIONS

for tort, contract, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances existing or taking place prior to or on the Plan Effective Date, whether asserted or to be asserted at any time in the State Court Action or otherwise, by Scott Canarelli against any and all of the Released Parties.

"Released Parties" means each and every Released Party as defined in the Plan, in all capacities whether as trustee, officer, director, shareholder or otherwise, including, without limitation: (i) AWDI; (ii) the Sibling Trusts; (iii) Lawrence Canarelli; (iv) Heidi Canarelli; (v) Edward Lubbers; (vi) Lubbers Law; (vii) AWH Ventures, Inc.; (viii) CanFam Holdings, LLC; (ix) Colorado Housing Investments, Inc.; (x) Colorado Land Investments, Inc.; (xi) Heritage 2, Inc.; (xii) Indiana Investments, Inc.; (xiii) Inverness Investments, Inc.; (xiv) Inverness 2010, LLC; (xv) Model Renting Company, Inc.; (xvi) SJA Acquisitions, LLC; and (xvii) SJSA Investments, LLC.

"Sibling Trusts" means (i) The Alyssa Lawren Graves Canarelli Irrevocable Trust, (ii) The Jeffrey Lawrence Graves Canarelli Irrevocable Trust, and (iii) The Stacia Leigh Lemke Irrevocable Trust.

2) Acknowledgment: As a condition for AWDI to withdraw the Motion, Scott Canarelli and the Solomon Firm shall acknowledge and agree that:

    a. Scott Canarelli has completely, conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, voided, extinguished and discharged the Released Claims.

    b. Scott Canarelli shall not assert or pursue any of the Barred Claims without leave of the Bankruptcy Court after notice to, and an opportunity to object by, AWDI.

    c. Scott Canarelli may proceed in the State Court Action solely with respect to the Excepted Claims, provided that any discovery sought by Scott Canarelli from any of the Released Parties shall be limited solely to discovery from Edward Lubbers, Lawrence Canarelli and Heidi Canarelli.

    d. Within five (5) business days of the execution of a Definitive Agreement, Scott Canarelli shall file such papers or take such other actions as necessary to effectuate the foregoing.

3) Withdrawal of Motion: Within five (5) business days of the execution of a Definitive Agreement, AWDI will withdraw the Motion without prejudice to seeking relief from the Bankruptcy Court for any breach of the Definitive Agreement.

4) Attorneys' Fees and Costs: Each of the parties shall be responsible for its own attorneys' fees and costs associated with the Motion, this Term Sheet and the Definitive Agreement. However, AWDI shall be entitled to recover from Scott Canarelli and/or the Solomon Firm any attorneys' fees or costs incurred in response to any breach of a Definitive Agreement, and such recovery shall be without prejudice to further sanctions as ordered by the Bankruptcy Court.

5) Jurisdiction: The Bankruptcy Court shall have jurisdiction over any dispute arising in connection with a Definitive Agreement.

ACTIVE\53501280.v1-2/13/18